Our final case for today is Wendy Nora. It's the appeal of Wendy Nora in the case of Liss against HSBC Bank and others. Mr. Pressel. Good morning, Your Honors. My name is Wayne Pressel, and I represent Wendy, Alice, and Nora. There's a council table with me. I appreciate your allowing me to appear today. I'm appearing as a Pro Hoc Vitae lawyer. I'm a lawyer from Nevada, although I'm admitted to state, or other states in practice, and I have a good deal of background in foreclosure law, and I'm representing Ms. Nora on this appeal. And you're just representing Ms. Nora, correct? Not Mr. Liss? Correct. Mr. Liss is not appealing this. Correct. When I look at a case like this, I ask myself, how is it we got here? Now I can see from this morning's docket that this Court is familiar with sanctioned cases, and that you've seen more than a few of them. And so I think I can cut to the chase, and that is that I take a look at the record, and I take a look and say, how did this situation come about? And what I'm going to focus on are three issues to bring to the Court's attention. You hardly need me to review the voluminous record in this case. It's long and well documented. However, I fear that what happens is that the real practical meaning of what transacted here is lost in the dozens and dozens of pages and arguments and motions and history. The first thing that really strikes me in this case is what happened when the three-judge panel of Judge Peterson, Judge Connolly, who is a district judge imposing the sanctions, and Judge Forey met and had a hearing in this case. And the transcript there, I think, is extremely telling. And the transcript of the pages I pointed to are page 25 through 30, and specifically Judge Connolly's understanding of bankruptcy law. And I won't go on with much quote, but let me give you at least a flavor of it. And he said, in part, during that hearing, and then she appealed that, meaning the state court decision, to this court ostensibly on the grounds that there was fraud committed in the state court proceedings. What page are you reading from there? Page 25 of the transcript of the hearing where there was a three-judge hearing on this. And I think where that first led me to believe that Judge Connolly did not have an appreciation, or had at that point his own inexact, wrong view of the role of Chapter 13. Chapter 13, and I don't need to lecture you about this, Chapter 13 is a statutory opportunity for homeowners to stay in their homes. That is not a foreclosure action. It is the ability for the federal courts to intervene in order to preserve the rights of the creditor, to preserve the rights of the debtor. Well, it's a restructuring. It is a reorganization. And there are, yeah, reorganization, restructuring, whatever you want to call it. But very frequently in any kind of bankruptcy case, including Chapter 13 cases, there's underlying litigation in the state courts which needs to take place to determine who has rights to this, who has rights to that, and that's where the foreclosure, we've seen lots of foreclosure situations, and that's where the foreclosure matter comes in. And the federal court doesn't re-adjudicate what the state court did, whether it's a contract claim, does A owe money to B, or vice versa, whether it's a foreclosure, secured transaction of some type. I mean, this is the daily work of the state courts feeding into the bankruptcy process. And I agree with Your Honor in that assessment. In this situation, remember that the state court action had taken place between 2010 and 2016. And during that time, my client only had one very brief encounter with that state court action. She was not the lawyer for the leases in that state court proceeding, other than the filing of one petition later on at the very end in 2016. So the aspersion that I think Judge Conley brought to such frustration, that this was somehow Ms. Nora litigating her issues in state court and then being unhappy, decided to run off to federal bankruptcy court to try the same issues, is simply incorrect. But she's still doing it. I don't see where you get that. Because critical in her view, for sure, is whether this note is authentic. The state court resolved that issue, and up until the time the briefs were filed in this court, she is not accepting that as an outcome. But Your Honor, there is an intervening event. And that intervening event was in September, on September 15 of 2016, when for the first time it was authenticated by an expert that the underlying note that determines the real party in interest, the entity that should be paid under a Chapter 13, and the entity that would have the ability to foreclose in the state court action, that that was a forgery. We have an expert testimony for that that has come in uncontroverted by HSBC in any proceeding so far, and is in fact now the basis of a stay that was issued by the state court in January of 2018 to permit the issue to go on to the state Supreme Court. Hasn't that been precluded, though, by Rooker-Feldman? No. Hasn't that been explained to Ms. Nora? No. The Rooker-Feldman or claim preclusion, depending on how you want to take a look at that issue, is not precluded. This is a newly discovered piece of evidence that has not even been fully adjudicated by the trial court on the motion to reopen the foreclosure. I thought the trial court denied the motion, and it's on appeal. It did deny the motion, but not on the grounds that it took a look at the note and decided that the note was actually entirely good. In fact, what the trial court did, and this is the most recent actions by the trial court, in revisiting, they initially passed on the foreclosure, and that went on to appeal. It was affirmed. This is a new episode in the entire case, and that is the September 2016 discovery of a very provable forgery of the note itself. Okay. If you want to save some rebuttal time, you don't have to rebut, but it's time. I think I reserved five minutes for rebuttal. But you've used most of them already. Then let me reserve that for rebuttal as long as it's okay with the court that I raise the other two issues. That's fine. Yeah. You can raise the two others. Mr. Bock? Good morning, Your Honors. I'm Ken Bock, appearing for Appellee HSBC USA. We have the appellee in this case. May it please the Court, I'm here to ask you to uphold the award of attorney's fees under Bankruptcy Rule 8020 and 28 U.S.C. 1927. I'll also mention that there is a closely related sua sponte sanctions order also issued under Section 1927. My client wasn't directly involved in that order, but if you have questions about it, I'll do my best to answer. On our motion, the district court sanctioned both appellants under Bankruptcy Rule 8020 and Attorney Nora under Section 1927. The court held that both appellants would be jointly liable for attorney's fees because the appeal was frivolous. In this court, that judgment is reviewed for abuse of discretion, but there's ample cause to deem the appeal frivolous under any standard, the first being that Judge Martin's order was quite sound. At the confirmation hearing, the debtor was required under 11 U.S.C. 1325A3 to prove that the plan had been filed and proposed in good faith. However, the confirmation hearing and the plan itself proved quite the opposite. The plan that the debtor filed indicated that payments to my client, that instead of making payments to my client, they would put those mortgage payments into their attorney's trust fund until the, quote, real creditor appeared. The testimony and exhibits and argument offered at the confirmation hearing was also nearly exclusively directed at challenging our standing. Based on this, Judge Martin correctly concluded that the plan was filed to continue a fight that we had already won in state court. From this, he concluded that the plan had been filed in bad faith, denied confirmation of the plan, and subsequently dismissed the case. Appellants haven't made any meritorious argument to make the case that Judge Martin was wrong in finding bad faith, and in fact, by repeatedly attempting to relitigate the state court judgment throughout these entire proceedings, they simply proved him right repeatedly. For 15 months before the case was dismissed, the appellants engaged in needless motion practice, filing things that did nothing to advance their case, but simply caused added expense and delay. You're talking just about motions in the federal court, I assume. Yes. Not anything that's going on in the state court. Is a, I suppose, a motion to reopen the state court's earlier opinion or whatever it might be? Well, Your Honor, I would suggest that that's exactly what they should have done when they originally received this report from the document examiner, but for whatever— Do we know anything about who this document examiner is? Very little other than his name, Larry Wickstrom. I did meet him in one— No effort to have Daubert qualifications or anything? No, Your Honor. The first of the rather needless things that they filed was a report of fraud that they made to the district court, which was quite out of place. It was as if the appellants were asking the district court to file criminal charges against us. Attorney Nora would later argue that this report was the reason why she reacted to her document examiner's report by appealing the bankruptcy case instead of going back to the state court. She didn't say why she couldn't simply contact the U.S. Attorney's Office. Shortly after this, they initiated a dispute over the custody of the note. The appellants wanted us to turn the original note over to the district court, saying that it was necessary to preserve this evidence of the fraud they alleged. However, we didn't want to turn this over for fear of the note getting lost in trance and that the note was endorsed in blank and therefore payable to bearers, so physical possession was quite important to us. They claimed that Judge Martin ordered us to do this, but they raised this issue before Judge Martin and asked to have that language included in the dismissal order. We objected to that, and Judge Martin sided with us. Far from concluding that issue, he still managed to bring it up before the district court. But moreover, this entire dispute over custody of the note was a complete waste of time because when Judge Martin issued his ruling saying that the plan had been filed in bad faith, he looked at the note, but he did not rule on the note. There were no findings about the note that were necessary for his finding of bad faith, so it ultimately was completely irrelevant to the issues on appeal. Nevertheless, they used the fact that that dispute was ongoing at the time that their briefing was due. They used this excuse not to file the brief in time for the deadline. After that brief was overdue by several months, we stepped in and moved to dismiss for lack of prosecution. The court didn't grant our motion to dismiss. Instead, they granted that motion to extend time that they had filed earlier, retroactively extending the deadline. When that next deadline arrived, they made a second request for an extension. This time it was for medical leave. They claimed Attorney Norrin needed time to recover from a concussion that was sustained nine months prior. At the time they reviewed this order and, in fact, granted this request, the court expressed skepticism about the veracity of this injury. However, after that, well, they gave her the benefit of the doubt at the time and granted that order. However, after that, when the court issued its notice of order to show cause, it raised this issue again. And then at the hearing, the court repeatedly extracted testimony from Attorney Norrin on this point so they could judge their credibility on this issue. And when the district court ended up entering its order, they said about her credibility that the fact that she had made this sort of request several times, including in other cases, just meant that she didn't have any credibility on this issue and that the court would no longer give her the benefit of the doubt. Judge Conley also questioned her about practicing in other cases during the 90-day extension that he gave her. And Attorney Norrin had to admit that she had, in fact, practiced in other cases during that time. Had or had not? I'm sorry? Had or had not practiced? That she had practiced in other cases during the 90 days. When the court granted the second order to extend time, it came with an admonition that no further extensions would be granted absent extraordinary circumstances and that if for any reason Attorney Norrin was incapable of proceeding, that Mr. Lee should find another attorney. That in any case, if the briefing was not filed by the deadline, the case would be dismissed. Of course, it didn't stop them from asking again when that deadline was immediately upon them. The basis this time was that they had filed a motion in state court to vacate our foreclosure judgment, finally, but now they needed time for that process to complete. This was an absolutely senseless request because Judge Martin's order that was under appeal was done well prior to these motions being filed in state court, so it couldn't have had any bearing on this determination that the bankruptcy was filed in bad faith. All in all, the appellants managed to drag this case out for 15 months before it was dismissed without ever filing their brief. The most important basis, in my opinion, for finding that this appeal was frivolous is simply that the arguments raised on appeal were meritless. Throughout the satellite skirmishes pursued in lieu of filing their brief, their core argument has been that my client isn't the real party in interest, isn't the party that's entitled to enforce the note, and that there is some other entity out there that nobody knows who it is that's really the entity entitled to enforce. This is a blatant attempt to sidestep the state court judgment that we won back in 2014. Now, it should be a fairly non-controversial, well-established point of law that federal courts are courts of limited jurisdiction and that only the United States Supreme Court can review state court judgments. However, throughout this process, appellants have refused to acknowledge this. And in spite of being ruled against on this issue, in this and in other cases, including while attempting to defend herself on the order to show cause, and in her brief before this court, Attorney Nora continues to insist that this is a valid argument to make in federal court. It's clear to me that she's not going to stop as long as she's practicing. By way of rebuttal, we heard earlier that there was a passage in the transcript that Judge Conley apparently misunderstood what Chapter 13 was about. I've read that passage quite differently. I think that Judge Conley was reacting to the fact that the arguments that had been made to him up until that point had all concerned this attempt to relitigate the state court judgment. It wasn't that he misunderstood Chapter 13. It was just that those were the arguments that had been made to him at this point. This case should have been about whether Judge Martin's ruling was correct. And there are a number of issues, I suppose, you could raise about that. But it ended up going off the rails in this attempt to relitigate the state court judgment. And I really believe that that's all that Judge Conley was getting at. So in conclusion, the purpose of this appeal was never to overturn Judge Martin's decision below. It was just filed to abuse the federal court system, attempting to relitigate the same issue as many times as possible, all while delaying an inevitable foreclosure and imposing costs on the client. If the Court doesn't have any additional questions, I can yield the balance of my time. I see none, so thank you very much. Thank you. Mr. Pressel. Thank you, Your Honor. This case is not over. This foreclosure is not over for the listeners. The bank will keep on saying that this thing is being relitigated and relitigated. It is not. There is a new claim that's provable by expert testimony that the note underlying and identifying who the real party of interest is is not the HSBC. And what was being challenged in bankruptcy court before Judge Conley, not Judge Martin, but Judge Conley, whose sanction order is the one in question here, what is being litigated there is the standing of the purported party in interest to even collect the money that might come out of a Chapter 13 bankruptcy. And the other reference here was 2017. Ms. Nora had an accident and had a head injury, and much of 2017 was consumed with her recovery from that. That was not questioned in the three-judge review of this matter that came before this court. And they admitted that their injury, admitted that she had a limited practice of the best she was able to, which was up and down with a very slow neurological recovery, and that should not be any kind of basis for seeing a delay. And I would note two things. One of them is that for much of 2017, HSBC was clear to foreclose and never did. And the last moment is that now the trial judge in Wisconsin, although he denied on procedural grounds the motion to reopen that's now on appeal, that he thought enough of the claim of forgery that he has put a stay on the writ of execution or the writ of assistance, I think they call it in Wisconsin. And the leases are still in their house, and they are not paying a mortgage because the judge said you don't have to pay a mortgage and you don't even have to pay the insurance. Thank you, Mr. Pressel. Thank you very much to both counsel. We will take this case under advisement.